**IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS, MISSOURI**

| | |
|---|---|
| C.J. LENZENHUBER, ) | |
| ) | |
|    c/o Keenan & Bhatia, LLC ) | |
|    225 S. Meramec Ave., Suite 325 ) | |
|    St. Louis, MO 63105 ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | Case No.: |
| ) | |
| MISONIX, INC., ) | JURY TRIAL DEMANDED |
| ) | |
|    Serve at: ) | |
| ) | |
|    Northwest Registered Agent ) | |
|    Service ) | |
|    200 NE Missouri Rd., Ste. 298 ) | |
|    Lees Summit, MO 64086 ) | |
| ) | |
| and ) | |
| ) | |
| BIOVENTUS LLC, ) | |
| ) | |
|    Serve at: ) | |
| ) | |
|    CT Corporation System ) | |
|    120 South Central Ave. ) | |
|    Clayton, MO 63105 ) | |
| ) | |
|    Defendants. ) | |

**PETITION**

Plaintiff C.J. Lenzenhuber, by and through counsel, states the following on personal knowledge as to her own acts and observations and on information and belief following reasonable investigation as to all other matters.

**PARTIES**

1.  Plaintiff C.J. Lenzenhuber ("Lenzenhuber") was employed by Defendant Misonix, Inc. She resides in Missouri, and is a citizen of Missouri.

2.  Defendant Misonix, Inc. ("Misonix") is a New York corporation with a principal place of business in Farmingdale, New York.

3.  Defendant Bioventus LLC is a Delaware corporation with a principal place of business in North Carolina. Bioventus LLC is sued as successor in interest to Misonix. Any reference to "Misonix" shall be deemed to include Bioventus LLC.

4.  Misonix is an "employer" within the meaning of the Missouri Human Rights Act ("MHRA"), RSMo Chapter 213.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction under Mo. Const. art. V, § 14, and RSMo 478.070. Claims here arise under Missouri law, and this action is non-removable because it raises a claim under the Missouri Workers' Compensation Law. *See* 28 U.S.C. § 1445(c); *Humphrey v. Sequentia, Inc.*, 58 F.3d 1238 (8th Cir. 1995).

6.  This Court has personal jurisdiction over Misonix, as Misonix transacts business within the City of St. Louis and events giving rise to this lawsuit occurred in St. Louis City.

7.  Venue is proper in the Circuit Court of the City of St. Louis, as events giving rise to this lawsuit occurred in St. Louis City, and Misonix may be found in St. Louis City.

8.  On June 24, 2020, Lenzenhuber timely filed her Charge of Discrimination. (Exhibit 1).

9.  The Missouri Commission on Human Rights ("MCHR") issued its Notice of Right to Sue on November 24, 2021. (Exhibit 2).

10. Lenzenhuber has thus exhausted all administrative prerequisites to filing this lawsuit and is timely filing this lawsuit.

**FACTS**

11. Lenzenhuber is a 42 year old woman who resides in St. Louis, Missouri. Lenzenhuber is a single mother.

12. Lenzenhuber is a professional in the medical equipment/device field, selling major medical equipment and devices and working with medical practices in doing so.

13. An acquaintance in the industry referred Lenzenhuber to Misonix for potential employment.

14. In or around October or November 2019, Lenzenhuber reached out to Sales Manager Tom Morrone ("Morrone") at Misonix and set up an interview at Barnes-Jewish Hospital in the City of St. Louis.

15. What Lenzenhuber did not know, but would find out over the next few months, was that Morrone was an abusive and biased boss. During the course of Lenzenhuber's employment, Morrone's treatment of Lenzenhuber, including his arbitrary and targeted outbursts, caused Lenzenhuber extreme emotional stress, which she would report to Misonix.

16. Lenzenhuber was kept waiting for a long time before the interview.

17. During this initial interview, Lenzenhuber discussed salary with Morrone.

18. In or around November 2019, Lenzenhuber had another interview with Morrone at the Magnolia Hotel in downtown St. Louis City. Morrone stopped the interview to look at a woman's picture; the picture was not risque, but left Lenzenhuber feeling uncomfortable.

19. In or around December 2019, Lenzenhuber was offered the job as a sales professional with Misonix and received an offer letter.

20. Lenzenhuber responded to the job offer and asked Human Resources ("HR") at Misonix about a breakdown of the commission structure and for an increase in the compensation

package. Morrone then called Lenzenhuber and seemed angry that she spoke with HR at Misonix about her salary. Lenzenhuber told Morrone that it is customary for sales professionals to negotiate their pay packages, and that failure to do so would reflect poorly upon her as a sales professional since negotiation is a core sales skill.

21. Lenzenhuber started work at Misonix on approximately January 13, 2020.

22. Lenzenhuber told Morrone that she is a single mother of two children aged seven and two. Morrone promised Lenzenhuber that he would accommodate her needs as a single mother, including but not limited to the fact that Lenzenhuber could not be suddenly called to a surgery. Morrone indicated that he understood Lenzenhuber needed to have tasks scheduled in advance due to her responsibilities as a single mother.

23. Despite Morrone's apparent understanding, he requested that Lenzenhuber fly out to a conference on short notice shortly after she began work at Misonix. Lenzenhuber told Morrone she could not do so due to her parenting responsibilities.

24. In or around January 2020, Lenzenhuber attended a surgery at Barnes-Jewish Hospital in the City of St. Louis. The surgeon excused Lenzenhuber from the surgery since Misonix's part of the surgery was complete. Lenzenhuber texted Morrone about this, and proceeded to do other Misonix work at Barnes-Jewish Hospital. About an hour later, Morrone walked up to Lenzenhuber and criticized her for leaving the surgery - despite the fact that the surgeon specifically stated that Lenzenhuber should leave.

25. Misonix also requested Lenzenhuber be available to meet a trainer at Starbucks in the Central West End of the City of St. Louis on or around early February 2020. Lenzenhuber met with the trainer for three days, but on the third day, Lenzenhuber had to adjourn the meeting early

Electronically Filed - City of St. Louis - February 22, 2022 - 09:11 PM

Electronically Filed - City of St. Louis - February 22, 2022 - 09:11 PM

due to an impending snowstorm and childcare needs.  The trainer did not seem to think it was a problem, but Morrone did.

26.	In late February 2020, there was a planned Misonix conference in the Orlando, Florida area.

27.	Since Lenzenhuber was still new to the company, she had not met most of her co-workers yet.

28.	Following an awards dinner, Lenzenhuber went back to her hotel room; it was around 10:30 or 11:00 PM.  Morrone texted Lenzenhuber and said that he wanted a team photograph.  Most of the members of Lenzenhuber's team were younger and seemed more willing to stay up late and party.

29.	The conference kept going and, on Friday, February 28, 2020, Lenzenhuber's mother called her.  During the conference, Lenzenhuber's mother was watching her children.

30.	Lenzenhuber's mother told Lenzenhuber that she was feeling sick and nauseated and could not continue caring for both of Lenzenhuber's children.  It was clear to Lenzenhuber that she needed to head back to St. Louis, Missouri, to care for her children.

31.	Lenzenhuber left the conference at around 5:00 or 5:30 PM, and informed Morrone she needed to leave the conference to care for her children.  There was no reason for Lenzenhuber to be present for the remaining training sessions since they did not relate to her job and attendance was optional.

32.	On Monday, March 2, 2020, Lenzenhuber texted Morrone.  Later that day, Morrone called Lenzenhuber and asked why she left the conference the previous weekend.  Lenzenhuber was ill during the phone call and she could barely talk because her voice was impacted by her illness.

33. During this phone call, Lenzenhuber told Morrone she was sick and reminded him of the reasons she had to leave the conference, as well as the fact that she had informed him as to why she left the conference.

34. Morrone acted upset and angry regarding the fact that Lenzenhuber left the conference. Lenzenhuber asked Morrone: "If I was a man, and I told you that my wife was sick and I had to go home and help with my kids, would we be having this conversation?" Morrone replied: "You need to have backup for your backup," apparently referring to Lenzenhuber's mother.

35. Lenzenhuber also reminded Morrone during this phone call that other individuals were permitted to leave the conference early. Morrone stated, "we're talking about you," and Lenzenhuber told him she felt as though she was being singled out. Morrone said, "your first strike was negotiating your salary."

36. Lenzenhuber told Morrone she felt as though he was holding her to a different standard than other people. He said, "I respect that you're a single mom, but it's just not going to work for this position, what happens if you have a case?"

37. During their phone call on March 2, 2020, Morrone terminated Lenzenhuber. At an earlier time, before the phone call in which he terminated Lenzenhuber but during Lenzenhuber's employment with Misonix, Morrone discussed another woman he had fired with Lenzenhuber.

38. Later on March 2, 2020, Lenzenhuber emailed HR and told HR she felt as though she was being discriminated against for being a single mother.

39. Lenzenhuber performed an exit interview with Misonix's HR department. The Vice President of HR told Lenzenhuber that the reasons given for her termination were not reasons

for which Lenzenhuber should have been terminated.  However, HR did not reverse Morrone's decision or bring her back to work.

40. Lenzenhuber was on the phone with HR for a while. Lenzenhuber told HR the decision to terminate her was uncalled for and not fair. Lenzenhuber made her emotional distress clear during this call. Lenzenhuber expressed her emotional distress to HR during this call and believes she started to cry on the call. Lenzenhuber stated she is a single mother with two children, one of whom she was totally responsible for, and also expressed her distress at being fired during the pandemic.

41. At both Misonix and in general, women are frequently criticized in the workplace for negotiating salary or demanding to be paid equally for their work.

42. To date, Misonix has not paid Lenzenhuber all of her commission due, has not paid certain travel expenses, and has not paid her for her last day of work. Lenzenhuber believes these are retaliatory actions.

43. Lenzenhuber believes that she was terminated because of her report of a workplace injury, sex (female), age (over 40), actual/perceived/record of disability, and association with a protected person (her mother), and that she was retaliated against for opposing discrimination.

## COUNT I

**Violation of the Missouri Human Rights Act**
**Sex Discrimination**
**RSMo Chapter 213**

44. Lenzenhuber incorporates each and every other paragraph of this Petition as if fully set forth here.

45. Lenzenhuber was an employee, and Misonix was an employer, within the meaning of the Missouri Human Rights Act ("MHRA").

Electronically Filed - City of St. Louis - February 22, 2022 - 09:11 PM

46. Lenzenhuber's sex was a motivating factor, or other legally sufficient cause, in Misonix's decision to terminate her employment.

47. Misonix terminated Lenzenhuber due to her status as a single mother, which is inextricably linked with her sex. As Morrone remarked, "I respect that you're a single mom, but **it's just not going to work for this position**, what happens if you have a case?"

48. Lenzenhuber has suffered damages, including but not limited to loss of pay/benefits and emotional distress.

49. Misonix acted with evil motive and/or in reckless disregard of Lenzenhuber's rights, justifying an award of punitive damages.

50. Lenzenhuber respectfully prays that this Court adjudge Misonix liable for sex discrimination in violation of the Missouri Human Rights Act, and grant all relief allowed under the law, as set forth in the Prayer in this Petition.

## COUNT II

**Violation of the Missouri Human Rights Act**
**Age Discrimination**
**RSMo Chapter 213**

51. Lenzenhuber incorporates each and every other paragraph of this Petition as if fully set forth here.

52. Lenzenhuber was an employee, and Misonix was an employer, within the meaning of the MHRA.

53. Lenzenhuber's age was a motivating factor, or other legally sufficient cause, in Misonix's decision to terminate her employment.

54. Lenzenhuber has suffered damages, including but not limited to loss of pay/benefits and emotional distress.

8

Electronically Filed - City of St. Louis - February 22, 2022 - 09:11 PM

55. Misonix acted with evil motive and/or in reckless disregard of Lenzenhuber's rights, justifying an award of punitive damages.

56. Lenzenhuber respectfully prays that this Court adjudge Misonix liable for age discrimination in violation of the Missouri Human Rights Act, and grant all relief allowed under the law, as set forth in the Prayer in this Petition.

## COUNT III

### Violation of the Missouri Human Rights Act
### Disability Discrimination
### RSMo Chapter 213

57. Lenzenhuber incorporates each and every other paragraph of this Petition as if fully set forth here.

58. Lenzenhuber was an employee, and Misonix was an employer, within the meaning of the MHRA.

59. Misonix perceived Lenzenhuber as having a disability during her termination phone call due to her illness and inability to speak in a normal tone of voice. This was a motivating factor, or other legally sufficient cause, in Misonix's decision to terminate her employment.

60. Lenzenhuber has suffered damages, including but not limited to loss of pay/benefits and emotional distress.

61. Misonix acted with evil motive and/or in reckless disregard of Lenzenhuber's rights, justifying an award of punitive damages.

62. Lenzenhuber respectfully prays that this Court adjudge Misonix liable for disability discrimination in violation of the Missouri Human Rights Act, and grant all relief allowed under the law, as set forth in the Prayer in this Petition.

Electronically Filed - City of St. Louis - February 22, 2022 - 09:11 PM

## COUNT IV

**Violation of the Missouri Human Rights Act**
**Associational Discrimination**
**RSMo Chapter 213**

63. Lenzenhuber incorporates each and every other paragraph of this Petition as if fully set forth here.

64. Lenzenhuber was an employee, and Misonix was an employer, within the meaning of the MHRA.

65. Misonix perceived Lenzenhuber's mother as having a disability due to Lenzenhuber having to leave the Orlando, Florida conference early to take over childcare duties while her mother was sick. Lenzenhuber's association with her mother was a motivating factor, or other legally sufficient cause, in Misonix's decision to terminate her employment.

66. Lenzenhuber has suffered damages, including but not limited to loss of pay/benefits and emotional distress.

67. Misonix acted with evil motive and/or in reckless disregard of Lenzenhuber's rights, justifying an award of punitive damages.

68. Lenzenhuber respectfully prays that this Court adjudge Misonix liable for associational discrimination in violation of the Missouri Human Rights Act, and grant all relief allowed under the law, as set forth in the Prayer in this Petition.

## COUNT V

**Violation of the Missouri Human Rights Act**
**Retaliation**
**RSMo Chapter 213**

69. Lenzenhuber incorporates each and every other paragraph of this Petition as if fully set forth here.

70. Lenzenhuber engaged in protected activity in that she opposed actual and/or reasonably-suspected discriminatory acts.

71. Misonix thereafter retaliated against Lenzenhuber.

72. Lenzenhuber's protected activity was a contributing factor in Misonix's actions.

73. Lenzenhuber has suffered damages, including but not necessarily limited to loss of pay and emotional distress.

74. Misonix acted with evil motive and/or in reckless disregard of Lenzenhuber's rights, justifying an award of punitive damages.

75. Lenzenhuber respectfully prays that this Court adjudge Misonix liable for retaliation in violation of the Missouri Human Rights Act, and grant all relief allowed under the law, as set forth in the Prayer in this Petition.

## COUNT VI

### Unpaid Commissions
### RSMo § 407.913

76. Lenzenhuber incorporates each and every foregoing and succeeding paragraph of this Petition as if fully set forth here.

77. Lenzenhuber was an employee, and Misonix was an employer, in the instant matter.

78. To date, Misonix has failed to pay Lenzenhuber all her commissions owed while she was employed by Misonix, in violation of RSMo § 407.913.

79. Lenzenhuber was qualified for her position and was performing her position to the reasonable expectations of Misonix.

80. Lenzenhuber respectfully prays that this Court adjudge Misonix liable for unpaid commissions in violation of RSMo § 407.913, and grant all relief allowed under the law, as set forth in the Prayer in this Petition.

## COUNT VII

### Unpaid Wages
### RSMo § 290.110

81. Lenzenhuber incorporates each and every foregoing and succeeding paragraph of this Petition as if fully set forth here.

82. Lenzenhuber was an employee, and Misonix was an employer, in the instant matter.

83. To date, Misonix has failed to pay Lenzenhuber for her last day of work, in violation of RSMo § 290.110.

84. Lenzenhuber was qualified for her position and was performing her position to the reasonable expectations of Misonix.

85. Lenzenhuber respectfully prays that this Court adjudge Misonix liable for her unpaid last day of work in violation of RSMo § 290.110, and grant all relief allowed under the law, as set forth in the Prayer in this Petition.

## COUNT VII

### Discrimination for Exercise of Worker's Compensation Rights
### RSMo § 287.780

86. Lenzenhuber incorporates each and every other paragraph of this Petition as if fully set forth here.

87. The Missouri Workers' Compensation Law, RSMo Chapter 287, gives employees the right to report on-the-job injuries, and to seek medical care for those injuries, and to have time off work to seek treatment and recuperate from injuries, among other rights.

88. Misonix was Lenzenhuber's employer, and Lenzenhuber was an employee, within the meaning of the Workers' Compensation Law.

89. Lenzenhuber exercised rights granted by the Workers' Compensation Law in that she reported injuries and sought other measures protected by the Workers' Compensation Law. She reported her injury to both Morrone and Human Resources, referencing his actions and how they made her feel.

90. Lenzenhuber complained of actionable workplace injuries, including but not limited to when she complained of extreme emotional stress to HR at Misonix. Her mental stress was work related because it was caused by Misonix and Morrone's treatment of Lenzenhuber,. This went beyond the stress typically encountered at work, and was extraordinary and unusual. Any reasonable person in Lenzenhuber's position would have experienced the same extreme stress when treated the way Morrone treated Lenzenhuber.

91. Misonix discriminated against Lenzenhuber in the terms and conditions of her work, ultimately discharging her and denying her commissions.

92. Lenzenhuber's protected actions were the motivating factor or other legally sufficient cause in Misonix's discriminatory action.

93. Lenzenhuber has suffered damage, including loss of pay and commissions and emotional distress, as a result of Misonix's discriminatory conduct.

94. Misonix acted with reckless disregard for Lenzenhuber's rights, and/or evil motive, justifying an award of punitive damages.

95. Lenzenhuber respectfully prays that this Court adjudge Misonix liable for discrimination for exercise of workers' compensation rights, and grant all relief allowed under the law, as set forth in the Prayer in this Petition.

**JURY DEMAND**

Plaintiff C.J. Lenzenhuber respectfully demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

Plaintiff C.J. Lenzenhuber respectfully prays that the Court enter judgment in her favor and against Misonix, and grant all relief allowed under law, including but not limited to:

A. Actual economic damages, including lost wages and benefits, adjusted for promotional opportunities lost;

B. Actual non-economic damages, including damages for emotional distress;

C. Punitive damages, liquidated damages, and civil penalties;

D. Attorney's fees, expert fees, and costs;

E. Reinstatement, backpay, and/or frontpay;

F. An order that Defendants cease and desist from all discriminatory practices and revise Lenzenhuber's personnel records to remove all negative references; and

G. Any other and/or further relief permitted by law.

Dated: February 22, 2022                Respectfully submitted,

KEENAN & BHATIA, LLC

__/s/ Mark J. Obermeyer_____
Sonal Bhatia, Mo. Bar 67519
Edward (E.E.) Keenan, Mo. Bar 62993
Mark J. Obermeyer, Mo. Bar 63140
225 S. Meramec Ave., Suite 325
St. Louis, MO 63105
Tel: (816) 809-2100
sonal@keenanfirm.com
ee@keenanfirm.com
mark@keenanfirm.com

*Attorneys for Plaintiff*